UNITED STATES of America, Appellee,

v.

**Won Tae KIM, Defendant–Appellant.**

**No. 539, Docket 89–1221.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1989.

Decided Feb. 15, 1990.

---

Colleen P. Cassidy, New York City (The Legal Aid Society, New York City, on the brief), for defendant-appellant.

Steven Abrams, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Before LUMBARD, NEWMAN, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal of a sentence poses procedural and substantive issues concerning the exercise of a district court's authority to impose a sentence above the range specified in the applicable sentencing guideline, i.e., to make an upward "departure." Won Tae Kim appeals from the May 12, 1989, judgment of the District Court for the Eastern District of New York (Thomas C. Platt, Jr., Chief Judge) convicting him on a plea of guilty of making a false statement concerning immigration matters, in violation of 18 U.S.C. § 1001 (1988), and sentencing him to six months in prison and a $10,000 fine. Though the prison term has been served and only the fine is now contested, we conclude that the upward departure was improperly made and that the fine must be reconsidered.

### Facts

Kim, an alien, was arrested at John F. Kennedy International Airport on December 27, 1988, when he attempted to smuggle two illegal aliens into the United States. Kim had escorted the aliens from Korea to Spain and then to the United States. Although he knew the aliens were Korean, he falsely stated to United States Customs officials at J.F.K. that the aliens were Japanese. A search of Kim disclosed fifty counterfeit $50 Federal Reserve notes in his possession.

Kim was charged in a six-count indictment. Four of the counts related to Kim's effort to escort the aliens into the United States. Counts 1 and 2 charged smuggling each of the two aliens, in violation of 8 U.S.C. § 1324(a)(1)(D) (1988); Count 3 charged making a false statement on a customs declaration by misrepresenting the name and nationality of one of the aliens, in violation of 18 U.S.C. § 1001 (1988); and Count 6 charged obtaining his own entry unlawfully by concealing his role in assisting the illegal entry of the two aliens, in violation of 8 U.S.C. § 1325(a)(3) (1988). The other two counts involved Kim's possession of the counterfeit Federal Reserve notes. Count 4 charged possession of counterfeit money with intent to defraud, in violation of 18 U.S.C. § 472 (1988), and Count 5 charged importation of the counterfeit money with knowledge that it was brought into the United States contrary to law, in violation of 18 U.S.C. § 545 (1988). Pursuant to a plea agreement, Kim pled guilty to Count 3, the false statement count, and all other charges were dismissed.

The presentence report, after a revision, determined that Kim's adjusted offense level was 2. Starting with a base offense level of 6 for the false statement offense, United States Sentencing Guidelines (hereinafter "U.S.S.G.") § 2F1.1(a) (Nov.1989) [all citations are to the 1989 version of the Guidelines, unless otherwise indicated], the report accorded Kim a two-level reduction for Kim's minor role in the scheme, id. § 3B1.2(b), and a further two-level reduction for acceptance of responsibility, id. § 3E1.1(a). For offense level 2 and Criminal History Category I, which applies to Kim, the sentencing table applicable to offenses committed between November 1, 1987, and November 1, 1989, called for a prison term between zero and two months, U.S.S.G. Ch. 5, Pt. A (sentencing table) (1987),[1] and a fine between $100 and $1,000, id. § 5E4.2(c)(3) (fine table).[2]

The report identified two grounds for a possible upward departure:

> Per Guideline 5K2.0, the aggravating offense conduct factor of alien smuggling may be considered as a basis for upward departure. Further, at the time of his arrest, the defendant was found by agents to be in possession of 50 counterfeit $50 Federal reserve notes. This criminal conduct, since there was no conviction or adjudication for that crime,

---

**1.** The current range, effective after the period relevant to Kim's offense, is zero to six months. U.S.S.G. Ch. 5, Pt. A (sentencing table) (1989); see id. App.C., Amend. 270, at C. 140.

**2.** The current range, effective after the period relevant to Kim's offense, is $100 to $5,000. U.S.S.G. § 5E1.2(c)(3) (fine table) (1989); see id. App.C., Amend. 281, at C. 146.

could not be computed into the determination of the criminal history category. However, since there is a preponderance of evidence that he possessed the counterfeit bills, that criminal conduct may be considered as a basis for upward departure per Guideline 4A1.3.

Without announcing the prospect of an upward departure, Chief Judge Platt imposed a sentence of six months' imprisonment, three years of supervised release, a fine of $10,000, and a $50 special assessment. When defense counsel said he assumed the Judge was upwardly departing, Chief Judge Platt replied, "Definitely, for the two reasons stated by the Probation Department in this memorandum." Since the term of incarceration has been served, Kim challenges on appeal only the amount of the fine, which remains unpaid.

## Discussion

■ Initially, we encounter a procedural problem with the upward departure, in light of *United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989), and *United States v. Cervantes*, 878 F.2d 50 (2d Cir.1989). Though these decisions were announced after Kim's sentencing and were obviously not then available to Chief Judge Platt, they nonetheless apply to our direct review of the sentence. *See Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987); *United States v. Coe*, 891 F.2d 405, 412 (2d Cir.1989). *Palta* emphasized the importance of "prior notice of the court's intention to depart" and "an opportunity to be heard as to why an upward departure [is] unwarranted." 880 F.2d at 640. Consonant with the statutory requirement that the sentencing judge must state "the specific reason" for departing from an applicable sentence range, 18 U.S.C. § 3553(c)(2) (1988), a sentencing judge contemplating an upward departure should inform the defendant of the factors that the judge is planning to rely upon and offer some brief explanation as to why these factors warrant a departure. That will alert counsel to the need to present any available challenge to the accuracy of such factors and to the propriety of their use for a departure.

Though counsel always can be expected to urge leniency in addressing a district judge at sentencing, under the Guidelines system his argument will normally be cast quite differently depending on whether the judge has indicated that an upward departure is contemplated. Without such indication, counsel will focus on those aspects of the case that merit leniency, arguing for a sentence at the low end of the applicable guideline range, or, if unusual mitigating factors are present, urging a downward departure. Faced with the prospect of an upward departure, however, counsel must focus on the technical issues of whether an upward departure is permissible under the statutory standard, 18 U.S.C. § 3553(b) (1988), whether a departure, if made, will be pursuant to part 4A or part 5K of the Guidelines, *see United States v. Coe*, 891 F.2d at 408–12, and whether anything in the Guidelines precludes such a departure, *see, e.g.,* U.S.S.G. § 5K2.0, at 5.43 (limiting harms as a basis for departure to those relevant to the offense of conviction under section 1B1.3). Counsel will also be concerned with appealing more generally to the judge's discretion not to make an upward departure or to make at most only a slight departure. This dual approach to sentencing arguments was not necessary prior to the Guidelines.

This case illustrates the value of notice of an intention to depart. The presentence report mentioned possession of counterfeit money as a possible ground for departure but did not indicate whether Kim was aware of the counterfeit nature of the money, a necessary element of the crimes charged in Counts 4 and 5. *See United States v. Asbury*, 586 F.2d 973, 977–98 (2d Cir.1978). In addition, the report identified possession of the money as a ground for a departure under section 4A1.3, which permits an increase in the criminal history category, yet the sentencing judge appears to have made a part 5K departure since he made no mention of any criminal history.

Turning to the substantive validity of the upward departure, we start with the statutory standard: A sentence is to be imposed within the applicable guideline range "un-

less the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988). This standard requires an exploration of the categories of circumstances the Commission "adequately" considered in formulating the Guidelines. Pertinent to the issues on this appeal, our inquiry must focus on the consideration given by the Commission to the acts of misconduct by the defendant other than the offense of conviction, since the District Judge sought to justify the upward departure in this case on the basis of the defendant's misconduct relating to the smuggling of aliens and the possession and importation of counterfeit money, neither of which formed the basis for conviction.

The Commission treated misconduct not resulting in conviction in four ways, each of which is instructive as to the issues on this appeal. First, the Commission identified, by examining thousands of prior sentences and presentence reports, those acts of misconduct that had traditionally influenced the sentences imposed for various crimes prior to the Guidelines. *See* U.S. S.G. Ch. 1, Pt. A § 4(b), at 1.7. This type of misconduct concerns acts that typically occur in the course of the offense for which the defendant was convicted and that aggravate the offense, for example, display of a weapon, infliction of injury, and taking large sums of money in connection with the offense of robbery. *See id.* § 2B3.1(b)(2)(C), (3), (6). The Commission labeled such misconduct "specific offense characteristics," *id.* Ch. 1, Pt. A § 4(a), at 1.5, and assigned appropriate increments of adjustment to the base offense level to prescribe added punishment for such offense characteristics. The use of "specific offense characteristics" reflects a crucial compromise at the heart of the Sentencing Guidelines. Recognizing that it faced a choice between "charge offense" sentencing, which would specify sentences based solely on the elements of the offense of conviction, and "real offense" sentencing,

which would specify sentences based on the defendant's actual conduct, the Commission opted for a "modified real offense system." *See id.* Ch. 1, Pt. A § 4(a), at 1.5; *United States v. Correa–Vargas,* 860 F.2d 35, 38–39 (2d Cir.1988); Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 8–12 (1988).

Having chosen to assign precise values to some "specific offense characteristics," the Commission then identified the categories of misconduct that the sentencing judge could examine in determining whether to make these adjustments to the base offense level, as well as in selecting the appropriate base offense level where more than one such level is provided for an offense. The Commission accomplished this task by formulating the "relevant conduct" guideline, U.S.S.G. § 1B1.3, *i.e.,* the identification of conduct, as stated in the initial set of guidelines, that is "relevant to *the offense of conviction.*" U.S.S.G. § 1B1.3 (1987). Included as "relevant conduct" are acts of the defendant "that occurred during the commission of the offense of conviction" or "in preparation for that offense," U.S.S.G. § 1B1.3(a)(1), and, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," (*i.e.,* "aggregate harm" offenses such as those involving drugs or money), acts of the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction," *id.* § 1B1.3(a)(2).

Second, the Commission specified that misconduct constituting offenses to which the defendant has stipulated in connection with the entry of a plea to the offense of conviction shall be treated as if the defendant had been convicted of additional counts charging such offenses. *Id.* § 1B1.2(c). That requirement triggers the application of the multi-count analysis set forth in sections 3D1.1–.5. Under these provisions, the stipulated misconduct results in an enhanced offense level beyond that applicable to the offense of conviction, but the enhanced offense level is less than would result from simply adding together

the offense levels for the offense of conviction and the stipulated offenses. *See* Breyer, *supra*, at 25–28.

■ Third, the Commission provided a means for taking into account "prior *similar* conduct not resulting in a conviction." U.S.S.G. § 4A1.3(e) (emphasis added). By focusing on "prior" misconduct, the Commission was obviously contemplating acts not relevant to the offense of conviction, since those acts would enter into the "relevant conduct" analysis used to determine the base offense level and specific offense characteristics. Where such "prior" acts are "similar" to the offense of conviction and the criminal history category does not "adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," the sentencing judge may make a part 4A departure by selecting a sentencing range applicable to a defendant with a higher criminal history category. *See United States v. Coe*, 891 F.2d at 409, 412–14; *United States v. Cervantes*, 878 F.2d at 55.

· Fourth, with respect to some acts of misconduct, the Commission contemplated that the sentencing judge will make an upward departure under the general authority of section 5K2.0. For several reasons, it must not be assumed, however, that this authority permits the sentencing judge to make a departure for *any* act of misconduct that the defendant may have committed. *Cf. United States v. Correa–Vargas*, 860 F.2d at 38. In the first place, the Commission explicitly stated that some acts of misconduct, though not shown by prior sentencing patterns to be "empirically important in relation to the particular offense [of conviction,] ... may nonetheless occur *in connection with* a crime" and that such acts "are precisely the type of events that the court's departure powers were designed to cover...." U.S.S.G. Ch. 1, Pt. A § 4(b), at 1.7 (emphasis added). For example, a physical injury inflicted in the course of committing a fraud, though not sufficiently typical to warrant identification as a specific offense characteristic with a specified base level adjustment, would justify a departure

above the offense level for fraud. But that rationale would not justify a departure simply because the defendant, at some point during the time when the fraud was being committed, engaged in a barroom brawl with someone having no connection with the fraud.

Moreover, as we have described, the Commission was careful to specify the different ways in which misconduct not resulting in conviction could be taken into account in determining punishment. The Commission identified the adjustments it thought appropriate for aggravating factors that frequently accompany various offenses of conviction, it detailed the scope of "relevant conduct" for purposes of assessing such aggravating factors, and it provided a method for enhancing the criminal history category to reflect prior similar acts of misconduct. Though these devices do not preclude consideration of unusual aggravating circumstances occurring in the course of committing the offense of conviction, for which departure was specifically contemplated, they indicate that the Commission did not expect *all* acts of misconduct, regardless of relationship to the crime of conviction, to warrant a departure.

Finally, the Commission's carefully explained compromise between "charge offense" sentencing and "real offense" sentencing would be undermined if a sentencing judge could make an upward departure for any act of misconduct, regardless of relationship to the offense of conviction. That approach would be pure "real offense" sentencing, not the "modified real offense" system the Commission adopted. The Commission reflected this point by specifying in its policy statement on departure, "Harms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in § 1B1.3." *Id.* § 5K2.0, at 5.43.

We recognize that in section 1B1.3, the Commission uses the term "harm" in distinction to the term "acts," apparently meaning "harm" to be the consequence of "acts" of misconduct. *See id.*

§ 1B1.3(a)(2), (3). The precise limitation in section 5K2.0 concerning "harms" therefore may not be applicable to all "acts." It is unlikely that the Commission expected the strictures of the relevant conduct guideline to apply as a limitation on all acts of misconduct that might warrant a departure. For example, where a defendant commits a series of bank robberies so close together in time that it would be artificial to consider some of them "prior" acts for purposes of section 4A1.3 just because the defendant pled to the last in the series, *see United States v. Coe*, 891 F.2d at 409–10, it would still be appropriate to make a part 5K departure and enhance punishment because of the series of related occurrences, *see* U.S.S.G. § 1B1.4, comment. (backg'd), even though the other robberies are not technically "relevant conduct" under section 1B1.3 because the "course of conduct" category in section 1B1.3(a)(2) is available only for offenses subject to "grouping" under multiple-count analysis and robberies are excluded from such "grouping," *see id.* §§ 1B1.3(a)(2), 3D1.2(d). In identifying the purposes for which the relevant conduct guideline applies, the guideline does not list departures. *Id.* § 1B1.3(a). At the same time, the "harm" limitation in section 5K2.0 suggests some restriction on the extent to which misconduct unrelated to the offense of conviction may warrant a departure. For a defendant convicted of fraud, once the Commission precluded a departure based on the harm inflicted in a barroom brawl unrelated to the fraud, it could not have intended to permit a departure for the act of striking the injurious blow.

■ We conclude that, with respect to acts of misconduct not resulting in conviction, the Commission intended to preclude departures for acts bearing no relationship to the offense of conviction, but to permit departures for acts that relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct.[3] The relationship that justifies departure, however, must be more than temporal; as the fraud example indicates, the barroom brawl does not justify a departure simply because it occurred during the time period of the fraud.[4]

■ Once acts of misconduct have been identified as warranting departure, the structure of the Guidelines offers some guidance as to the normal *extent* of the departure. That guidance is found initially in the multi-count analysis of sections 3D1.-1-.5. Since the Commission carefully constructed a system for aggregating acts of misconduct that result in conviction (or stipulation in connection with a plea), that system must initially be used by a judge contemplating enhanced punishment for acts of misconduct not resulting in conviction, where the acts of misconduct constitute offenses for which guidelines have been established. Otherwise, an act that need be proven only by a preponderance of evidence, *see United States v. Guerra*, 888 F.2d 247, 249–51 (2d Cir.1989), might result in more punishment than would be called for if the act had been proven beyond a reasonable doubt and had resulted in conviction. Once having applied the multi-count analysis to the acts of misconduct and the offense of conviction, however, the

---

**3.** Perhaps the Commission had in mind conduct "related" to the offense of conviction in some sense broader than the relevant conduct relationship when, for purposes of applying the acceptance of responsibility guideline, it referred to "admission to authorities of involvement in the offense *and related conduct.*" U.S. S.G. § 3E1.1, comment. (n. 1(c)) (emphasis added).

**4.** Though the relevant conduct guideline includes acts occurring "*during* commission of the offense of conviction," U.S.S.G. § 1B1.3(a)(1) (emphasis added), the Commission must have meant not only "during" but also "related to" the offense of conviction. Otherwise a barroom

brawl occurring "during" a three-month period in which a mail fraud offense was committed would be included. That it was not intended to be included is evident from two circumstances. First, the original version of section 1B1.3 described its scope as limited to "all conduct, circumstances, and injuries *relevant to the offense of conviction*," U.S.S.G. § 1B1.3 (1987) (emphasis added). Second, the Commission stated, in adopting the current version of section 1B1.3, which omits the language concerning scope, that "the purpose of this amendment is to clarify the guideline" and that "[t]he amended language restates the intent of § 1B1.3 as originally promulgated." *Id.* App.C., Amend. 3, at C. 7.

judge need not depart upward all the way to the aggregate guideline range resulting from that calculation. On the other hand, the judge is not limited to that range in especially serious cases. If the offense of conviction or the other acts of misconduct warranting a departure are accompanied by aggravating factors not adequately considered by the Commission in setting the guideline ranges for the offense of conviction or the various acts of misconduct considered under the multi-count analysis, a departure beyond the aggregate guideline range would still be available despite the use of multi-count analysis. But the *fact* that the other acts of misconduct occurred, once counted in the multi-count analysis, may not be relied upon as a basis for a departure greater than that called for by the multi-count analysis. *See United States v. Coe,* 891 F.2d at 410.

Further guidance concerning the extent of an upward departure is provided by the structure of the sentencing table. That table indicates the ranges of punishment the Commission deems appropriate both for conduct more serious than the typical misconduct comprehended by the defendant's offense and for criminal histories more serious than that reflected in the defendant's criminal history category. When a criminal history category is deemed inadequate and a judge is contemplating a 4A departure by moving horizontally across the sentencing table to a more serious category, we have ruled that the judge must consider the next higher categories in sequence to determine if they adequately reflect the seriousness of the defendant's criminal history. *See United States v. Coe,* 891 F.2d at 412–13; *United States v. Cervantes,* 878 F.2d at 55. By the same token, when an offense level is deemed inadequate and a judge is contemplating a 5K departure by moving vertically down the sentencing table to a more serious level, the judge should consider the next higher levels in sequence to determine if they adequately reflect the seriousness of the defendant's conduct. Doing so will afford the judge an opportunity to compare the defendant's conduct, with its aggravating circumstances, to the type of conduct for which the Commission has prescribed more severe punishment. That is consistent with the caution we have indicated is appropriate for upward departures. *See United States v. Rivalta,* 892 F.2d 223, 232–33 (2d Cir. 1989); *United States v. Coe,* 891 F.2d at 413 n. 9.

Whether the upward departure in the pending case was substantively permissible under the principles we have outlined requires separate consideration of the counts concerning the two illegal aliens and the counts concerning the counterfeit money. The acts of misconduct involved in Counts 1, 2, and 6, which concern smuggling the two aliens, are all sufficiently related to the offense of conviction, Count 3, which charges false statement concerning the aliens, to be available for consideration as a basis for departure. If multi-count analysis is initially used, all four counts are to be grouped together since they involve the same victim, the United States (and its interests in enforcing the immigration laws), and the same transaction. *See* U.S. S.G. § 3D1.2(a). The Commission specifically gives as an example of proper grouping three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. *Id.* § 3D1.2, comment. (n. 3, example 5). The offense level for the most serious of the grouped offenses, *id.* § 3D1.3(a), is 9, the base offense for smuggling unlawful aliens, *id.* § 2L1.1(a). If Kim receives the two-level reduction for minimal planning and the two-level reduction for acceptance of responsibility, which the District Judge allowed, the resulting offense level is 5. According to the fine table applicable to Kim's offense, that level specifies a maximum fine of $2,500, U.S.S.G. § 5E4.2(c)(3) (fine table) (1987), which is higher than the $1,000 maximum fine for the offense level applicable to the false statement count alone, but less than the $10,000 fine that was imposed. If the counterfeit money misconduct is put aside for the moment, the presentence report appears to disclose no aggravating circumstances concerning the alien smuggling misconduct that would justify a departure above a fine of $2,500.

■ With respect to the counterfeit money misconduct,[5] the offense of possessing such money, if viewed in isolation, would not be sufficiently related to the misconduct concerning smuggling aliens to be available for departure. However, Kim possessed the counterfeit money when he arrived with the illegal aliens, and he was charged not only with possessing the money, Count 4, but also with unlawfully importing it, Count 5. Under the circumstances, the misconduct concerning the counterfeit money bore a sufficient relationship to the alien smuggling misconduct to be available for consideration as a basis for departure, provided the sentencing judge determined, by a preponderance of the evidence, that Kim's possession of the money and his importation of it was knowing. However, the record reveals neither a finding on that score nor any inquiry by the District Judge or the probation officer concerning the circumstances under which Kim acquired the counterfeit money. Though knowledge may be inferred from surrounding facts and circumstances, *see United States v. Asbury,* 586 F.2d at 978, some exploration of those circumstances must occur. Possession alone is not a sufficient basis from which to infer knowledge that money is counterfeit. *See United States v. Gonzalez,* 617 F.2d 104, 107 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980); *United States v. Brown,* 348 F.2d 661, 662 (2d Cir.), *cert. denied,* 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157 (1965).

If, upon remand, Kim's possession of the money is found to be knowing, then the multi-count analysis may be broadened to include the misconduct involved in possessing and smuggling the money. That will require determining the applicable guideline for these offenses, a task that presents its own complexities. The applicable guideline for a violation of 18 U.S.C. § 472, the possession of counterfeit money charged in Count 4, is section 2B5.1 of the Guidelines. It sets a base offense level of 9, U.S.S.G. § 2B5.1(a), and provides for increases in the offense level depending on the face value of the counterfeit money, *id.* § 2B5.1(b)(1). Since the face amount of the money Kim possessed was $2,500, a one-level increase is indicated. *Id.; id.* § 2F1.1(b)(1)(B). Whether Kim should receive the two-level reduction for minimal role is not clear. If he acquired the counterfeit money in connection with his role as traveling companion for the two illegal aliens, his role would appear to be as minor for the money offenses as for the alien offenses. However, the "minor role" reduction might not be available if Kim obtained the money as a venture of his own. We will assume that the reduction will be made, though the District Judge is free not to accord it upon a proper finding. With the reduction, the offense level for the misconduct charged in Count 4 is 8 (9 + 1 − 2) for purposes of the multi-count analysis.

The applicable guideline for a violation of 18 U.S.C. § 545, the importation of counterfeit money charged in Count 5, is section 2T3.1 of the Guidelines. It sets a base offense level corresponding to the amount of the customs duty evaded, an approach that seems inapplicable to smuggling counterfeit money. Though this guideline also

5. Kim advances a technical argument why the counterfeit money misconduct may not be used to enhance the amount of the fine imposed for the offense of conviction. The presentence report recommended using the counterfeit money misconduct as a basis for a departure under section 4A1.3. Kim contends that since a part 4A departure results in an increase in the criminal history category, rather than the offense level, and since the fine table correlates fines only with offense levels, the recommendation to depart under section 4A1.3 cannot affect the amount of the fine. The argument is unavailing. In the first place, the presentence report erred in suggesting that the counterfeit money misconduct should be considered only as a 4A departure. This misconduct was neither prior nor similar to the offense of conviction. Second, the District Judge was not limited in his use of the counterfeit money misconduct to the method of departure recommended by the presentence report. Third, even where a part 4A departure is appropriate, we see no reason why a sentencing judge may not make some upward adjustment in a fine if the judge concludes that monetary punishment is an appropriate way to reflect the inadequacy of the prison term indicated by the applicable criminal history category.

suggests an upward departure for smuggling items for which entry is prohibited when the duties evaded do not reflect the harm to society, *id.* § 2T3.1, comment. (n. 2), it would appear that the guideline for possession of counterfeit money is more relevant than the smuggling guideline. Congress prescribed a higher maximum penalty for possession of counterfeit money (fifteen years), 18 U.S.C. § 472, than for smuggling (five years), *id.* § 545, and presumably would wish to have Kim's conduct evaluated under the guideline for the offense deemed more serious. Thus, in performing the multi-count analysis, the counterfeit money offenses should be considered to have an offense level of 8, the level applicable to the count 4 misconduct.

The next question is whether the counterfeit money offenses may be included in the same group with the alien offenses for purposes of the multi-count analysis. Though the alien offenses may be grouped with each other under section 3D1.2(a), the counterfeit money offenses may not be grouped with the alien offenses. The interests protected by the immigration laws and the currency laws are so distinct that it is not realistic to consider both offenses to have as a common "victim" the United States. With the alien and counterfeit money offenses placed in separate groups, the aggregate offense level for the two groups of offenses is 10 (8 for the counterfeit offenses plus 2 for the additional group of alien offenses). U.S.S.G. § 3D1.4. Granting Kim the two-level reduction for acceptance of responsibility, which the District Judge allowed, yields an offense level of 8. According to the fine table in effect at the date of Kim's offense, that level specifies a fine between $1,000 and $10,000, U.S.S.G. § 5E4.2(c)(3) (fine table) (1987). And though the multi-count analysis is an available guide in making a departure above the offense level of 2, which is applicable to Kim's offense of conviction, the District Judge is not obliged to depart to the full extent of the enhanced level indicated by the multi-count analysis, much less to the top of the range for fines applicable to that enhanced level.

Since the departure resulting in the $10,-000 fine was procedurally deficient and, depending on the findings on remand, might have been substantively improper, that portion of the judgment imposing the fine must be vacated, and the cause remanded for reconsideration.