**UNITED STATES of America, Appellee,**

v.

**Gualberto BAEZ, Defendant–Appellant.**

**No. 1485, Docket 90–1646.**

United States Court of Appeals,
Second Circuit.

Argued July 9, 1991.

Decided Sept. 6, 1991.

Jorge DeJesus Guttlein, New York City (Aranda & Guttlein, New York City, on the brief), for defendant-appellant.

Bruce G. Ohr, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. and Samuel W. Seymour, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before MESKILL, NEWMAN and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This sentencing guidelines case concerns the use of the guidelines as an analogy in

determining the extent of an upward departure. Gualberto Baez appeals from the October 24, 1990, judgment of the District Court for the Southern District of New York (Pierre N. Leval, Judge), sentencing him to a term of 51 months upon his plea of guilty to possession of counterfeit currency in violation of 18 U.S.C. § 472 (1988). We affirm.

## Background

Baez was originally sentenced to a term of 54 months. Judge Leval made an upward departure from the applicable guideline range of 21–27 months because of Baez's role in a serious episode of obstructing justice. Baez and two other men had abducted the informant to whom Baez had sold counterfeit money. The trio entered the informant's car, which was stopped at a traffic light, put a gun to his head, placed him on the floor of the back seat, tied his hands, and threatened to kill him if he testified against them. After driving around for four hours, they released him, and later abandoned his car.

Judge Leval concluded that the two-level offense adjustment for obstruction of justice, U.S.S.G. § 3C1.1, inadequately reflected the seriousness of Baez's conduct and therefore made an upward departure to 54 months. On a prior appeal, we agreed that a departure was appropriate, but remanded for resentencing so that the District Judge could reconsider the extent of the departure in light of *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), which had been decided after imposition of Baez's initial sentence.

In *Kim* we ruled that the structure of the guidelines provides guidance as to the normal extent of a departure. We noted two pertinent aspects of the guideline structure. The first is the multi-count analysis set forth in section 3D1.1–5. Where a departure is contemplated because of misconduct constituting an offense, it will normally be appropriate to use the multi-count analysis to determine the aggregate offense level for the offense of conviction and the offense warranting a departure. *Id.* at 684–85. This assures that, absent special circumstances, the departure because of an uncharged offense will not result in a higher offense level than would have resulted if the defendant had been prosecuted for both the charged and the uncharged offenses. The second aspect of the guideline structure pertinent to the extent of a departure is the sentencing table. The table affords the sentencing judge an opportunity to consider the extent of punishment that the Sentencing Commission has determined is normally appropriate for various degrees of misconduct. *Id.* at 685. This is another way of assuring that, absent special circumstances, a departure because of particular uncharged misconduct will not result in a sentence higher than the sentence normally applicable to that type of misconduct.

On remand, Judge Leval carefully endeavored to comply with *Kim*. He calculated what the offense level would be under the multi-count analysis if the episode with the informant were considered to be kidnapping and if the episode were considered to be the lesser offense of witness tampering. The District Judge also consulted the sentencing table and compared Baez's misconduct to various forms of misconduct for which the table prescribes guideline ranges similar to the ranges yielded by the multi-count analysis. In fact, Judge Leval, proceeding cautiously in light of a new precedent, pursued the matter in more detail than will normally be necessary. The point of *Kim* is to use the multi-count analysis and the sentencing table as useful guidance in determining the extent of a departure, not to precipitate a time-consuming analysis of every possible calculation of arguably relevant circumstances.

Ultimately, Judge Leval decided to consider the abduction episode as witness tampering, 18 U.S.C. § 1512(b). He therefore endeavored to apply the multi-count analysis to the charged offense of counterfeiting and the uncharged offense of witness tampering. He arrived at an aggregate offense level of 22, for which the range is 41–51 months. He imposed a sentence of 51 months.

## Discussion

Baez contends that the District Judge erred in his application of the multi-count analysis. The argument is based on the calculation suggested to Judge Leval by the prosecution in a letter prior to resentencing. The prosecution stated that the applicable offense level for the witness tampering offense was 20, U.S.S.G. § 2J1.2(a), (b)(1) (base offense level of 12, plus an 8–level increase for threat of physical injury) and that the combined offense level for Baez's witness tampering offense and his counterfeiting offense would have been 22, citing section 3D1.4(a).

The Government's advice was incorrect. The multi-count analysis yields an offense level of 22 under section 3D1.4(a) only if the counterfeiting and witness tampering offenses are considered to be in distinct "groups." In fact, however, the two offenses are closely-related offenses that should have been placed within a single group. Section 3D1.2(c) specifies that counts are to be grouped within a single group when "one of the counts embodies conduct that is treated as a specific offense characteristic or other adjustment to the guideline applicable to another of the counts." The offense level for the counterfeiting offense, 16, had been enhanced two levels under section 3C1.1—because the episode with the informant was considered an obstruction of justice. The Commission has stated expressly that an adjustment to an underlying offense for obstruction of justice requires placing the underlying offense and the obstruction offense within a single group for multi-count analysis. *See* § 3D1.2, comment. (n. 5). If the witness tampering was considered a level–20 offense, the combined offense level would have been 20, since the level for counts within a single group is the level for the count with the highest offense level. *See* § 3D1.3(a).

For several reasons, however, this apparent miscalculation of the multi-count analysis requires no reconsideration of Baez's sentence. First, counsel raised no objection to the District Judge's statement that the multi-count analysis yielded an offense level of 22. In fact, counsel suggested sentencing at an offense level of 23 or 24. Though sentencing issues may sometimes be reviewed on appeal despite lack of objection at trial, *see United States v. Moon*, 926 F.2d 204, 209 (2d Cir.1991); *United States v. Chartier*, 933 F.2d 111, 116 (2d Cir.1991); *United States v. McCall*, 915 F.2d 811, 814 (2d Cir.1990); *United States v. Irabor*, 894 F.2d 554, 555 (2d Cir.1990); Fed.R.Crim.P. 52(b),[1] such consideration is not assured, *see United States v. Altman*, 901 F.2d 1161, 1165–66 (2d Cir.1990); *United States v. Soliman*, 889 F.2d 441, 443 (2d Cir.1989), and it is less likely to be available in a case already once remanded for careful reconsideration of the sentence. Moreover, Judge Leval could have placed the witness tampering offense at level 22, instead of 20, by making a two-level adjustment under section 3C1.1 for Baez's false testimony at the hearing at which his bail was revoked because of the abduction of the informant. *See United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991). Indeed, as he noted, he could have considered the abduction episode to be a kidnapping, warranting an offense level of 29. *See* § 2A4.1.

More fundamentally, however, the multi-count analysis is to provide only guidance as to the extent of a departure, not a rigid formula. As we noted in *Kim*, if the "acts of misconduct warranting a departure are accompanied by aggravating factors not adequately considered by the Commission in setting the guideline ranges for.... the various acts of misconduct considered under the multi-count analysis, a departure beyond the aggregate guideline range would still be available despite the use of multi-count analysis." *Kim*, 896 F.2d at 685. Baez's conduct in threatening to kill the informant was especially egregious. Even if Judge Leval had been correctly

---

1. Unlike most trial errors, which have an uncertain effect on the outcome of a trial and which, if corrected despite lack of objection, precipitate an entire new trial that often could have been avoided had objection been made, sentencing errors under the Sentencing Guidelines normally have a precisely quantifiable effect, especially in an era of flat time sentencing, without parole, and their correction precipitates only a normally brief resentencing procedure.

advised by the Government and had thought that the multi-count analysis yielded an offense level of 20, a departure up to level 22 would surely not have been "unreasonable," 18 U.S.C. § 3742(f)(2), on the facts of this case. It would be pointless to remand again to see if Judge Leval, advised that a sentence at level 22 is within reasonable bounds, might wish to depart from level 16 only up to level 20, which carries a maximum of 41 months, since we know from his initial sentence that he believed that a sentence of 54 months was appropriate. His current sentence of 51 months is an entirely reasonable departure.

Baez's remaining contentions—that he should have been permitted to withdraw his guilty plea and that he was entitled to a *Fatico* hearing—even if open in light of the limited purposes of the remand, are entirely without merit. Judge Leval properly declined to permit withdrawal of the plea, and his independent review of the evidence presented at a hearing before the Magistrate Judge obviated the need for further consideration of Baez's challenge to the informant's account of the abduction.

The judgment of the District Court is affirmed.