USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 96-1881 UNITED STATES OF AMERICA, Appellee, v. GERARDO CLASE-ESPINAL, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________  ____________________ Before Selya, Cyr and Lynch, Circuit Judges. ______________  ____________________ Owen S. Walker, with whom Federal Defender Office was on brief ______________ _______________________ for appellant. Donald L. Cabell, Assistant United States Attorney, with whom ________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________  ____________________ June 19, 1997  ____________________ CYR, Circuit Judge. Gerardo Clase Espinal ("Clase") CYR, Circuit Judge. ______________ appeals the sentence imposed upon him for unlawful reentry following deportation. See 8 U.S.C. 1326(a). The appeal ___ centers upon a novel government motion for downward departure under U.S.S.G. 5K2.0, which the district court rejected. We affirm. I I BACKGROUND BACKGROUND __________ A citizen of the Dominican Republic, Clase was first deported from the United States on February 4, 1994, following a felony conviction in a Texas state court for cocaine possession. On October 23, 1995, he was arrested in the United States again, and charged with unlawful reentry subsequent to an aggravated felony conviction. See 8 U.S.C. 1326(b)(2) (1995). After ___ Clase entered a guilty plea, the government agreed to recommend a downward departure under U.S.S.G. 5K2.0 in return for a stipu- lation of alienage and deportability following his release from prison, as well as waivers of any deportation hearing and any appeal from the deportation order.  At sentencing, after Clase represented that he would so stipulate, the government recommended a two-level downward departure on the ground that the stipulation constituted conduct not contemplated by the Sentencing Guidelines (or "Guidelines"). See generally U.S.S.G. 5K2.0. After rejecting the requested ___ _________ section 5K2.0 departure as beyond its power, the district court increased the base offense level ("BOL") from eight to twenty- 2 four, pursuant to U.S.S.G. 2L1.2(b)(2) (1995), on the ground that the 1994 deportation had followed a conviction for an aggravated felony.  II II DISCUSSION DISCUSSION __________ Clase appeals the resulting forty-six month prison sentence, challenging both the sixteen-level enhancement imposed pursuant to U.S.S.G. 2L1.2(b)(2) and the district court ruling that it lacked authority to depart under U.S.S.G. 5K2.0. The government supports the section 2L1.2(b)(2) enhancement, but joins Clase in opposition to the district court ruling denying a section 5K2.0 departure.  A. "Aggravated Felony" Enhancement (U.S.S.G. 2L1.2(b)(2)) A. "Aggravated Felony" Enhancement (U.S.S.G. 2L1.2(b)(2)) ______________________________________________________ The prior state conviction was ruled an "aggravated felony," for section 2L1.2(b)(2) purposes, because cocaine possession is a felony under Texas law, see Tex. Health & Safety ___ Code Ann. 481.115(f) (1996), and accordingly violates the Federal Controlled Substances Act, 21 U.S.C. 801 et. seq. ___ ____ Section 2L1.2(b)(2), comment. (n.7), defines "aggravated felony" as, inter alia, "any drug trafficking crime . . . defined in 18 _____ ____ U.S.C. 924(c)(2)." Section 924(c)(2) defines "drug trafficking crime" as, inter alia, "any felony punishable under the Con- _____ ____ trolled Substances Act."1   ____________________ 1Clase argues that Congress cannot have intended that a state felony conviction for mere drug possession satisfy the "aggravated felony" requirement under 2L1.2(b)(2), since the term "drug trafficking offense" clearly excludes simple drug possession. As this claim was never raised below, we review only 3 Clase acknowledges that our recent decision in United ______ States v. Restrepo-Aguilar, 74 F.3d 361, 364-65 (1st Cir. 1996), ______ ________________ forecloses the present claim, but urges nonetheless that the term "felony," as used in 18 U.S.C. 924(c)(2), encompasses only offenses which would constitute felonies under federal law. As Restrepo-Aguilar directly controls, and Clase offers no tenable ________________ basis for disregarding stare decisis, we decline to revisit the _____ _______ matter. See, e.g., Williams v. Ashland Eng'g Co., Inc., 45 F.3d ___ ____ ________ _______________________ 588, 592 (1st Cir.) (noting that First Circuit panels generally are bound by a prior panel decision directly on point), cert. ____ denied, 116 S. Ct. 51 (1995). ______ B. Downward Departure Under U.S.S.G. 5K2.02 B. Downward Departure Under U.S.S.G. 5K2.0 _________________________________________ On April 28, 1995, the Attorney General of the United States disseminated a memorandum ("the Memorandum") authorizing United States Attorneys to recommend a departure below the applicable guideline sentencing range in return for an admission of alienage and deportability, as well as waivers of any adminis-  ____________________ for "plain error." United States v. Olivier-Diaz, 13 F.3d 1, 5 _____________ ____________ (1st Cir. 1993). Not surprisingly, error cannot be considered "plain" unless, among other things, it is "obvious." Id. Since this court has ___ already rejected the very contention asserted by Clase on appeal, see United States v. Restrepo-Aguilar, 74 F.3d 361, 364 n.5 (1st ___ _____________ ________________ Cir. 1996), we are in no position to conclude that the district court ruling constituted "plain error" in these parts. Olivier- ________ Diaz, 13 F.3d at 5. The remaining challenges to the  ____ 2L1.1(b)(2) ruling merit no discussion. 2Although a refusal to depart is not ordinarily appealable, see United States v. Tucker, 892 F.2d 8, 11 (1st Cir. 1989), the ___ _____________ ______ rule is otherwise if, as here, the district court refused on the ground that it lacked the authority to depart. See United States ___ _____________ v. Romolo, 937 F.2d 20, 22 (1st Cir. 1991). ______ 4 trative deportation hearing and any judicial appeal from the resulting deportation order. The Memorandum indicates that a downward departure based on such cooperative conduct on the part of alien criminal defendants is permissible because it is a "mitigating circumstance of a kind, or . . . degree, not ade- quately taken into consideration by the Sentencing Commission . . . ."). The United States Attorney for the District of Massa- chusetts accordingly recommended a two-level downward departure under section 5K2.0 based on the agreement by Clase to stipulate to deportation and waive any related appeal. The district court rejected the recommendation.  I am not satisfied that there are grounds within Section 5K2.0 to permit depar- ture based upon . . . a representation [that Clase would stipulate to deportation, etc.]. I make that determination as a matter of law. _ ____ ____ _____________ __ _ ______ __ ___ If I have such power, then I need to be in- structed that I do by another court . . . . [U]pon my own independent determination, I find the use of Section 5K2.0 to permit a downward departure on the basis of the con- cession of deportability and an agreement not to contest it is not a matter that was left ___ _ ______ ____ unconsidered by the Sentencing Commission. ____________ Certainly, the specific factual circumstances were not considered by the Sentencing Commis- sion, but the larger issue of deportation and the mechanisms for deportation, agreements to ameliorate the difficulties that are adminis- trative burdens for the government, are mat- ters within the scope of the "heartland" calculations of the Sentencing Commission, generally, and in connection with deporta- tion. I view the Attorney General's willing- _ ____ ___ ________ _________ ________ ness, in certain circumstances, to agree to ____ __ _______ _____________ __ _____ __ such a downward departure to be in the form ____ _ ________ _________ __ __ __ ___ ____ of a shadow sentencing guideline, unautho- __ _ ______ __________ _________ ________ 5 rized by relevant law[,] which allocates _____ __ ________ ___ responsibilities in this area and [is] not entitled to any particular weight. (Emphasis added.)3 As posed by the parties and addressed by the district court, therefore, the question before us turns upon an abstract legal principle: whether the stipulation and waiver relating to alienage and deportability permit a section 5K2.0 departure based on the conclusory departure rationale propounded in the Memoran- dum. The government and the defendant insist on appeal that the stipulation and waiver relating to alienage and deportability remove the case from the "heartland." See United States v. ___ ______________ Rivera, 994 F.2d 942, 947 (1st Cir. 1993) (Breyer, C.J.). We ______ agree that the proffered departure ground is not expressly forbidden, discouraged, or encouraged by the Sentencing Guide- lines. See Koon v. United States, 116 S. Ct. 2035, 2045 (1996) ___ ____ _____________ (quoting Rivera, 994 F.2d at 949); see also U.S.S.G. 5H1.1  ______ ___ ____ 5H1.12; 5K2.1 5K2.18. Yet we agree with the district court that it is insufficient, as a matter of law, to warrant a down- ward departure.   ____________________ 3Generally speaking, a decision not to depart is reviewed only for abuse of discretion. Koon v. United States, 116 S. Ct. ____ _____________ 2035, 2046-47 (1996); United States v. Cali, 87 F.3d 571, 579-80 _____________ ____ (1st Cir. 1996). Nevertheless, as noted in Koon, "[a] district ____ court by definition abuses its discretion when it makes an error of law." 116 S. Ct. at 2047. Moreover, the government agreed it was "essentially taking a legal position . . . that stipulated deportations are, as a matter of law, something not fully contem- plated by the Sentencing Commission in the preparation of the guidelines and subject to a downward departure through Section 5K2.0." Therefore, the district court ruling must be reversed if it constituted legal error. 6 The sentencing court may resort for decisional assis- tance to 28 U.S.C. 991-998 (i.e., the Sentencing Commission ____ enabling act itself), 18 U.S.C. 3553, the Guidelines, including the policy statements and official commentary, as well as to relevant case law. Moreover, courts must bear in mind the expert . Sentencing Commission ("Commission") assessment that departures based on judicial determinations that a proffered ground for departure was not adequately considered by the Commission are to be regarded as "highly infrequent." See U.S.S.G. Ch. 1, pt. A, ___ intro. comment. 4(b); see also Koon, 116 S. Ct. at 2045. Absent ___ ____ ____ a guideline or commentary directly addressing a proffered ground for departure, therefore, sentencing courts must examine the "structure and theory of [the] relevant individual guidelines and the Guidelines taken as a whole," with a view to whether the proffered ground makes the case sufficiently atypical to remove it from the "heartland." Koon, 116 S. Ct. at 2045 (quoting ____ Rivera, 994 F.2d at 949). ______ 1. Whether Stipulated Deportation Constitutes 1. Whether Stipulated Deportation Constitutes __________________________________________ a Mitigating Circumstance "of a kind" Not a Mitigating Circumstance "of a kind" Not _________________________________________ Contemplated by the Sentencing Commission? Contemplated by the Sentencing Commission? _________________________________________ An aggravating or mitigating circumstance falls within the "heartland" unless it is "of a kind" not adequately consid- ered by the Commission or "present to a degree" neither readily envisioned nor often seen in connection with such an offender or offense of conviction. See 18 U.S.C. 3553(b); U.S.S.G.  ___ 5K2.0; United States v. Sklar, 920 F.2d 107, 115 (1st Cir. 1990). _____________ _____ We are loath to presume, as a general matter, that the Commission 7 either overlooked or inadequately considered the statutory and regulatory structures upon which an informed sentencing treatment of immigration offenses significantly depended. See, e.g., ___ ____ U.S.S.G. 2L1.2 comment. (citing to 8 U.S.C. 1326); id. ___ comment. (n.4) (describing 16-level enhancement for alien previ- ously deported after conviction for aggravated felony). Rather, given its mandate, see 28 U.S.C. 994, as well as its institu- ___ tional expertise and experience, see id. 995, we think it is ___ ___ quite clear that the Commission would have considered that an alien defendant, particularly one convicted of unlawful reentry ________ _______ subsequent to deportation for an aggravated felony, almost certainly would be deported again. See 8 U.S.C. 1251(a)(1)(B) ___ (alien who has entered without inspection), 1251(a)(2)(A)(iii) (alien convicted of aggravated felony after admission) (1996) (amended sections presently codified at 8 U.S.C. 1227 (1997)). Furthermore, we believe it would be farfetched to suppose that the Commission overlooked the central reality that in all likelihood deportation would occur by normal operation of law as a matter of course irrespective of the alien ____________ __ ___ _____ defendant's consent following a conviction for illegal reentry ___________ _______ subsequent to deportation for an aggravated felony. Cf. United ___ ______ States v. Restrepo, 999 F.2d 640, 647 (2d Cir.) (even absent any ______ ________ indication in the Guidelines that Congress or the Commission "considered the interplay between deportability and sentencing provisions," deportability is not a ground for departure because, 8 among other reasons, "it is difficult to believe that the Commis- sion was not conscious that a large number of defendants sen- tenced in the federal courts are aliens"), cert. denied, 510 U.S. _____ ______ 954 (1993); United States v. Ceja-Hernandez, 895 F.2d 544, 545 ______________ ______________ (9th Cir. 1990) (per curiam) ("When setting the offense level for ___ ______ entry after deportation, the Sentencing Commission would certain- ly have been aware of the practice of promptly deporting aliens after they serve such sentences.").  Similarly, the facilitative nature of stipulated deportations does not strike us as a circumstance "of a kind" left unconsidered by the Commission. Several guidelines treat stipulated deportations in the same manner as formal deportations for purposes of subsequent prosecution. For example, sections 2L1.1(b)(3) and 2L2.2(b)(1) identify a prior deportation, whether voluntary or involuntary, as a "specific offense" characteristic. See also U.S.S.G. App. C, amend. 196 (1995) (likewise discussing ___ ____ voluntary as well as involuntary deportations). Although these provisions simply indicate that prior deportations, voluntary as well as involuntary, are aggravating "specific offense" charac- teristics, their presence in the Guidelines conspicuously demon- strates Commission awareness not only that numerous illegal aliens become enmeshed in the criminal justice system, but that many are expelled from the United States without ever undergoing formal deportation proceedings.4 Moreover, given the large  ____________________ 4See Immigration and Naturalization Serv. v. Lopez-Mendoza, ___ _____________________________________ _____________ 468 U.S. 1032, 1044 (1984) (noting that approximately 97.5% of all illegal aliens are deported from the United States voluntari- 9 numbers of illegal aliens expelled from the United States each year without undergoing formal deportation proceedings,5 we consider it exceedingly improbable that the Commission either overlooked stipulated expulsions altogether or regarded their facilitative value to be "of a kind" warranting a downward departure. These analogous data indicate that an alien criminal defendant with no plausible basis for contesting deportation  particularly one convicted of illegal reentry subsequent to deportation for an aggravated felony does not meet the atypicality requirement for a section 5K2.0 departure simply by relying upon whatever administrative convenience presumably may result from a stipulated deportation. Cf. United States v. ___ _____________  ____________________ ly with no formal adjudication of status by the Immigration and Naturalization Service ["I.N.S."]). Indeed, the data consistent- ly indicate that only about 3% of all apprehended aliens who are expelled ever undergo a deportation hearing. See Immigration and ___ Naturalization Service, 1993 Statistical Yearbook 158 tbl.59 ___________________________ (1994); Immigration and Naturalization Service, 1987 Statistical ________________ Yearbook 124 tbl.70 (1988) (tables reflecting that, in 1993, only ________ about 3% of all apprehended aliens required to leave the United States were deported after a hearing. The data are similar in other years: 3.3% in 1992, 2.6% in 1991, and 2% in 1987.). The vast majority of illegal aliens are subjected to a nonadversarial procedure known as "voluntary departure with safeguards" (admis- sion of illegal status, agreement to leave, and retention in custody pending a voluntary departure observed by an I.N.S. agent) or submit to a "required departure under docket control" (after I.N.S. officer starts deportation file, alien admits illegal status and accepts voluntary departure). See id. at ___ ___ xxxix. I.N.S. does not publish data regarding stipulated depor- ______ tations, as distinguished from stipulated departures requiring no _______ formal administrative adjudication. 5In 1991, for example, 28,759 aliens were deported and 1,060,745 were required to depart (totaling 1,089,504 expelled). 1993 Statistical Yearbook 158 tbl. 59; 1992: 38,202 deported and _________________________ 1,105,160 required to depart (totaling 1,143,362 expelled), id.; ___ 1993: 36,686 deported and 1,242,169 required to depart (totaling 1,278,855 expelled), id.  ___ 10 Barber, 93 F.3d 1200, 1205 (4th Cir. 1996) (vacating upward ______ departure for using firearm to effect second degree murder, because "Commission could not have failed to take into account . . . that that offense is commonly committed by use of a gun . . . . No scenario could be more typical, more within the heartland, of second-degree murder than death by one weapon or another, especially by firearm.").6 We therefore conclude that the Sentencing Commission was fully cognizant that virtually all alien criminal defendants, convicted under 8 U.S.C. 1326(a) and sentenced pursuant to U.S.S.G. 2L1.2, would be subjected to deportation and that many undoubtedly would stipulate to deportation. Accordingly, we hold, at least in the absence of a colorable, nonfrivolous defense to deportation, that the proffered ground for departure under U.S.S.G. 5K2.0 does not constitute a mitigating circum- stance of a kind not adequately considered by the Commission. __ _ ____ 2. Whether the Stipulated Deportation 2. Whether the Stipulated Deportation __________________________________ Constituted Mitigation "to a degree" Constituted Mitigation "to a degree" ___________________________________ Not Contemplated by the Commission? Not Contemplated by the Commission? __________________________________  ____________________ 6An analogous guideline provision likewise bolsters our assessment. Section 3E1.1(a) permits a two-level downward adjustment for clearly demonstrating acceptance of responsibility for the offense of conviction. U.S.S.G. 3E1.1(a). Neverthe- less, "a defendant who . . . frivolously contests [] relevant ___________ ________ conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. com- ___ ment. (n.1(a)) (emphasis added). By the same token, we think a downward departure for simply stipulating to deportation follow- ing a conviction for illegal reentry subsequent to an aggravated felony, unaccompanied by any suggestion that the alien defendant possessed a nonfrivolous defense to deportation, would represent ___ a disproportionate reward for whatever modest administrative benefit might obtain.  11 A mitigating circumstance is present to a degree not contemplated by the Commission only if it is portentous enough to make the case meaningfully atypical. United States v. Mariano, ____________ _____________ _______ 983 F.2d 1150, 1154 (1st Cir. 1993) ( 5K2.0 serves as a "safety valve" for "important, atypical" factors which remove the case from the "heartland"); Sklar, 920 F.2d at 115 n.7 (proffered _____ circumstance "must have weight . . . it must be sufficiently portentous to move the case out of the heartland for the offense of conviction."); United States v. Williams, 891 F.2d 962, 967 _____________ ________ (1st Cir. 1989) ("departures must be based upon meaningful __________ atypicality; . . . judges can always flyspeck individual cases to ___________ find some sort of idiosyncracy. . . . If the guidelines are to provide a coherent system of criminal sentencing, the trial court's right to depart, up or down, must be restricted to those few instances where some substantial atypicality can be demon- ___________ ___________ ______ strated.") (emphasis added). _______ Absent some mitigating circumstance not suggested here, no substantial atypicality is demonstrated where an alien defen- dant simply stipulates to deportation and no nonfrivolous defense to deportation is discernible. Compare United States v. Khan, _______ _____________ ____ 920 F.2d 1100, 1107 (2d Cir. 1990) (discussing potential downward departure for saving government informant's life), cert. denied, _____ ______ 499 U.S. 969 (1991). As the district court noted, the government's conclusory departure recommendation, simpliciter, ___________ does not purport to demonstrate that the facilitative conduct relied upon even constituted substantial assistance warranting 12 sentencing leniency. Cf. United States v. Cardenas, 896 F.2d ___ _____________ ________ 317, 320 (8th Cir. 1990) (holding that government's acknowl- edgement that defendant accepted personal responsibility does not control sentencing determination); United States v. Nunley, 873 ______________ ______ F.2d 182, 187 & n.6 (8th Cir. 1989) (same); United States v. ______________ Forbes, 888 F.2d 752, 754 (11th Cir. 1989) (sentencing court not ______ bound by government stipulation that defendant was minor partici- pant). Consequently, there is no indication that any administra- tive convenience to the government constituted a mitigating circumstance "to a degree" not adequately considered by the Commission. See United States v. Romolo, 937 F.2d 20, 24-25 (1st ___ _____________ ______ Cir. 1991); Sklar, 920 F.2d at 115. More to the present point, _____ the stipulation in this case must be considered de minimis from __ _______ the standpoint of its assistance in alleviating any administra- tive burden upon the government, since Clase has no discernible defense to deportation.  Thus, the parties essentially are left with their implicit contention that any stipulated deportation constitutes ___ an extraordinary mitigating circumstance, for no other reason than that it bears the government's endorsement and dispenses with an administrative hearing. However, were downward depar- tures permitted simply on the conclusory representations in the Memorandum, without regard to whether the alien defendant has a nonfrivolous defense to deportation, individualized guideline sentencing indeed could be undermined by what the district court aptly termed a "shadow guideline" that would erode the prescribed 13 BOL in any alien-criminal defendant's case to which the govern- ment chose to apply the Memorandum, simpliciter.7  ___________ The district court prudently recognized that sentencing courts may not defer to unsubstantiated prosecutorial recommenda- tions as adequate grounds for section 5K2.0 departures. We note as well that even the indispensable government motion for a "substantial assistance" departure under U.S.S.G. 5K1.1 simply presents the matter for judicial consideration. See Mariano, 983 ___ _______ F.2d at 1155 ("[T]he decision whether to depart after the govern- ment has made such a [ 5K1.1 substantial assistance] motion . . . falls squarely within the district court's domain. The dis- trict court is not obligated to depart downward simply because a grateful prosecutor prefers a lighter sentence."). The district court correctly determined that it lacked authority to depart on the ground that the stipulated deportation constituted mitigation to a degree neither readily envisioned nor often seen in connec- tion with such an offender or offense of conviction. See ___ Mariano, 983 F.2d at 1154; Sklar, 920 F.2d at 115 n.7. _______ _____ III III CONCLUSION CONCLUSION __________ With no record indication that this case is meaning- fully atypical in any material respect, see id. at 115, the ___ ___  ____________________ 7The Memorandum itself simply announces that the "Adminis- tration is committed to effecting the deportation of criminal aliens from the United States as expeditiously as possible. You [i.e., United States Attorneys] can make a major contribution to ____ this effort by effectively using available prosecutive tools for dealing with alien defendants." See also pp. 4-5 supra. ___ ____ _____ 14 section 5K2.0 departure recommendation lacked a cognizable legal basis. Accordingly, it is unnecessary to determine whether a stipulation of alienage and deportability, accompanied by the attendant waivers, may ever serve as an adequate ground for downward departure under section 5K2.0. See Koon, 116 S. Ct. at ___ ____ 2051 ("with few exceptions, departure factors should not be ruled out on a categorical basis"). The district court judgment is affirmed.  _______________________________________ 15